UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHELLE M. KRUL,

                    Plaintiff,

          -v-                                    6:20-CV-198

MEGAN J. BRENNAN, Postmaster
General, United States Postal Service,
THOMAS KELLY, LISA LYNCH,
JOHN DOE(S), and JANE DOE(S),

                    Defendants.[1]


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

BOSMAN LAW FIRM, LLC                      AJ BOSMAN, ESQ.
Attorneys for Plaintiff                   ROBERT STRUM[2]
3000 McConnellsville Road
Blossvale, NY 13308

HON. ANTOINETTE T. BACON                  MARY E. LANGAN, ESQ.
Acting United States Attorney for the     Ass't United States Attorney
   Northern District of New York
100 South Clinton Street, Room 900
Syracuse, NY 13261

445 Broadway, Room 218                    KAREN FOLSTER
Albany, NY 12207                             LESPERANCE, ESQ.
                                          Ass't United States Attorney

DAVID N. HURD
United States District Judge

_____

   [1] Megan J. Brennan has retired as U.S. Postmaster General. The Clerk of the Court will be directed to amend the caption to substitute Louis DeJoy, the current officeholder, as the named defendant. *See* FED. R. CIV. P. 25(d).

   [2] Mr. Strum argued the matter for plaintiff pursuant to a temporary practice authorization order issued by the Appellate Division, Fourth Department.

**MEMORANDUM–DECISION and ORDER**

**I. INTRODUCTION**

On February 24, 2020, plaintiff Michelle M. Krul ("Krul" or "plaintiff"), a former employee of the United States Postal Service ("USPS" or the "Postal Service"), filed this civil rights action against defendants United States Postmaster General (the "Postmaster General"), USPS Albany District Manager Thomas Kelly ("District Manager Kelly" or "Kelly"),[3] USPS Albany District Human Resources Manager Lisa Lynch ("HR Manager Lynch" or "Lynch"), and John and Jane Does (the "Does").

Krul's initial complaint alleged claims for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the First and Fourteenth Amendments to the U.S. Constitution. Dkt. No. 1. Plaintiff later amended her pleading as of right. Dkt. No. 6. This amendment added factual detail in support of her claims but did not change the legal theories under which plaintiff sought relief. *Id*.

On August 21, 2020, the Postmaster General, District Manager Kelly, and HR Manager Lynch (collectively "defendants") moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Krul's first amended complaint. Dkt. No. 18. According to defendants' opening brief, plaintiff's Title VII claims should be dismissed because she failed to plausibly allege any causal relationship between the mistreatment she claims to have suffered and her status as a member of a protected class. *Id*. Defendants further argued that plaintiff's Constitutional claims under the First and Fourteenth Amendments were barred by the Supreme Court's decision in *Brown v. General Services Administration*, 425 U.S. 820

---

[3] The caption identifies this defendant as "Thomas Kelly," but plaintiff's proposed second amended pleading refers to him by the surname "Kelley."

(1976), which held that Title VII provides the exclusive remedy for discrimination and retaliation claims brought by covered employees in the federal workplace. *Id*.

On October 9, 2020, Krul opposed defendants' pre-answer motion to dismiss and cross-moved under Rule 15 for leave to amend her complaint a second time. Dkt. No. 22. In the proposed second amended pleading submitted as part of her cross-motion to amend, plaintiff withdrew her First and Fourteenth Amendment claims against District Manager Kelly and HR Manager Lynch and replaced them with claims under the Fifth Amendment. Dkt. No. 22-2. According to plaintiff, Kelly and Lynch can be held individually liable for the alleged Constitutional violations under the implied cause of action initially recognized by the U.S. Supreme Court in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Id*.

Both motions have been fully briefed. Oral argument was heard on November 12, 2020 in Utica, New York. Decision was reserved.

## II. **BACKGROUND**

The following factual allegations are taken from Krul's proposed second amended complaint, Ex. A to Bosman Aff., Dkt. No. 22-2 ("Proposed Am. Compl."), and are assumed true for the purpose of resolving defendants' motion to dismiss.

Krul started working for the Postal Service in 1984. Proposed Am. Compl. ¶ 4. During the time period relevant here, plaintiff held the position of Post Office Operations Manager ("POOM"), a supervisory job that required her to manage USPS operations inside a designated "territory"; *i.e.*, all the post offices and other postal facilities located in a certain geographic area. *Id*. ¶ 11.

In December of 2014, District Manager Kelly, Krul's direct supervisor, placed another

employee, HR Specialist Mary Simmons ("Simmons"), into the Jamesville Postmaster Position "on paper only."  Proposed Am. Compl. ¶ 13.  Plaintiff alleges that Simmons's HR job was being terminated or abolished, so Kelly made this move to keep Simmons on the Postal Service's payroll.  *Id*.

Krul, whose territory as POOM included the Jamesville Post Office, objected to Simmons's placement.  *See* Proposed Am. Compl. ¶ 13.  As plaintiff explains, the Jamesville Post Office "was in strong need of stable management" because it had "recently suffered a fatal accident."  *Id*.  In plaintiff's view, Simmons was unqualified for the job as Jamesville Postmaster and therefore District Manager Kelly's decision to move Simmons into that position over plaintiff's objection undermined plaintiff's supervisory authority over her territory and jeopardized the welfare and stability of the other postal employees.  *Id*.

In January of 2015, Krul relayed these objections to District Manager Kelly during a telephone call.  Proposed Am. Compl. ¶ 13.  Kelly dismissed plaintiff's concerns and "slammed the phone."  *Id*.  According to plaintiff, male POOM supervisors were not subjected to this kind of interference with personnel matters in their territories.  *Id*.  Thereafter, Kelly and other USPS managers began to deny plaintiff developmental opportunities that she needed in order to qualify for promotions.  *Id*. ¶¶ 14, 19.  As a result, plaintiff was passed over for promotional opportunities in favor of similarly situated male employees.  *See id*. ¶ 15.

In August of 2015, the Postal Service realigned the geographic "territories" that Krul and her fellow POOMs supervised.  Proposed Am. Compl. ¶ 16.  This workload realignment favored her male counterparts, who were given easier assignments with smaller territories and fewer management responsibilities.  *Id*. ¶¶ 16, 18.  Plaintiff complained to District Manager Kelly and to others about the unequal distribution of labor.  *Id*.  Thereafter, Kelly

forced plaintiff to relocate from the Utica office to the Fort Plain office, which required a much longer commute. *Id*. Plaintiff also alleges that Kelly deliberately assigned her to the Fort Plain office because it was a dump—the Fort Plain office had sat unused for years, with no water, heat, or telephones and with plumbing, electrical, asbestos, and other possible safety problems. *Id*. ¶ 17. Plaintiff requested to relocate to the Remsen office, which was safer and closer to home, but this request was denied. *Id*.

In April or May of 2016, District Manager Kelly embarrassed Krul by criticizing her leadership decisions in the middle of some USPS leadership meetings. Proposed Am. Compl. ¶ 20. According to plaintiff, Kelly never treated male POOMs in this way. *Id*. Around the same time frame, Kelly offered plaintiff a job reassignment to the "South POOM position in Utica." *Id*. ¶ 21. However, plaintiff alleges Kelly "demanded an answer immediately," which in plaintiff's telling was not how he handled reassignment opportunities with male employees. *Id*. Plaintiff later learned that Kelly only offered her this reassignment opportunity after similarly situated male employees turned it down. *Id*.

In June of 2016, District Manager Kelly criticized Krul during a meeting with other members of USPS, including HR Manager Lynch. Proposed Am. Compl. ¶ 22. When plaintiff raised an objection to how her male counterparts were routinely being treated more favorably, Kelly mocked plaintiff in a "high-pitched whiny tone." *Id*. Thereafter, Kelly excluded plaintiff from certain decision-making matters even though her male counterparts were included in them. *Id*. ¶¶ 23-25. Plaintiff alleges Kelly also interfered with her disciplinary decisions, mocked her, glared at her, ignored her friendly small talk, and repeatedly accused her of faking an illness. *Id*. ¶ 25.

On October 13, 2016, Krul filed an administrative complaint with the Equal

Employment Opportunity Commission ("EEOC").  Proposed Am. Compl. ¶ 26.  Plaintiff also

spoke with the Postal Service's internal Equal Employment Opportunity ("EEO") counselors,

who are tasked with handling discrimination claims made by postal employees.  *See id*.  After

she filed her administrative complaint, HR Manager Lynch misrepresented certain job

postings in a way that was "designed to portray Plaintiff as incompetent."  *Id*. ¶ 28.  This

retaliation caused plaintiff embarrassment and humiliation.  *Id*.  District Manager Kelly and

HR Manager Lynch continued to deny plaintiff career development opportunities.  *Id*. ¶ 29.

In September of 2017, defendants again undermined Krul's authority by assigning her

to supervise an employee "outside the normal process"; *i.e.*, defendants deprived plaintiff of

her "routine authority to select employees based on merit."  Proposed Am. Compl. ¶ 30.  And

on October 18, 2017, District Manager Kelly added to plaintiff's workload an additional,

unfavorable POOM assignment outside her ordinary geographic area.  *Id*. ¶ 31.

Krul continued to make internal complaints about this mistreatment.  On October 25,

2017, District Manager Kelly directed plaintiff to stop using e-mail to communicate with HR

Manager Lynch.  Proposed Am. Compl. ¶ 32.  According to plaintiff, her similarly situated

co-workers were not burdened with this requirement, which made day-to-day communication

more difficult and caused plaintiff to suffer additional fear and anxiety.  *Id*. ¶ 33.

On November 3, 2017, Krul was called to a meeting with District Manager Kelly and

HR Manager Lynch.  Proposed Am. Compl. ¶ 33.  There, plaintiff was admonished for

documenting the alleged mistreatment in e-mails and again directed to only contact Kelly and

Lynch verbally.  *Id*.  According to plaintiff, the meeting was intimidating and "designed to

keep her from preserving evidence in support of her claims of discrimination and

retaliation."  *Id*.

On January 18, 2018, Krul filed a second administrative complaint with the

EEOC.  Proposed Am. Compl. ¶ 34.  Plaintiff received a right-to-sue letter for this complaint

on November 22, 2019, *id*., and received a right-to-sue letter for her first EEOC complaint on

February 27, 2020, *id*. ¶ 26.  According to plaintiff, the hostile work environment and

continued retaliatory behavior forced her to retire early from the Postal Service.  *Id*. ¶ 33.

## III.  <u>LEGAL STANDARD</u>

Where, as here, "a plaintiff seeks to amend [the] complaint while a motion to dismiss

is pending, a court has a variety of ways in which it may deal with the pending motion to

dismiss, from denying the motion as moot to considering the merits of the motion in light of

the amended complaint."  *Morris v. N.Y. State Police*, 268 F. Supp. 3d 342, 358 (N.D.N.Y.

2017) (cleaned up).

After the twenty-one day period in which to serve an amendment as of right has

expired, "a party may amend its pleading only with the opposing party's written consent or the

court's leave.  The court should freely give leave to amend when justice so requires."  FED. R.

CIV. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any

apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of

the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, etc.—the leave

sought should, as the rules require, by 'freely given.'").

As relevant here, "it is well established that leave to amend a complaint need not be

granted where amendment would be futile."  *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir.

2003).  "An amendment to a pleading is futile if the proposed claim could not withstand a

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Morris*, 268 F. Supp. 3d at 358

(quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *see also IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) ("The standard for denying leave to amend based on futility is the same as the standing for granting a motion to dismiss.").

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 298 (N.D.N.Y. 2019) (quoting *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012)).  "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." *Id*.

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." *United States v. Bedi*, 318 F. Supp. 3d 561, 564-65 (N.D.N.Y. 2018) (citation omitted).  "In making this determination, a court generally confines itself to the facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Forjone*, 414 F. Supp. 3d at 298 (citation and internal quotation marks omitted).

## IV. <u>DISCUSSION</u>

Krul's proposed second amended complaint withdraws her First and Fourteenth Amendment claims against District Manager Kelly and HR Manager Lynch and replaces them with Fifth Amendment claims against those defendants under the implied private cause of action first recognized in *Bivens*.  Plaintiff's proposed pleading also re-alleges her Title VII claims for discrimination and retaliation against the Postmaster General.

Thus, Krul's proposed second amended complaint asserts:  (1) a Title VII

discrimination claim against the Postmaster General; (2) a Title VII retaliation claim against the Postmaster General; (3) a Fifth Amendment discrimination claim against Kelly and Lynch; and (4) a Fifth Amendment retaliation claim against Kelly and Lynch.  Proposed Am. Compl. ¶¶ 36-47.

## A.  Title VII Claims

Krul has correctly named the Postmaster General, and not the Postal Service itself, as the defendant for her Title VII claims.  *See* 42 U.S.C. § 2000e-16(c).  Although in Title VII cases the institution or entity (and not the supervisor or the head of the company) is ordinarily the appropriate party to name as a defendant, in actions brought by a federal employee the head of the federal department, agency, or unit fills that role.  *See, e.g.*, *Mathirampuzha v. Potter*, 371 F. Supp. 2d 159, 163 (D. Conn. 2005) ("[T]he proper defendant in a Title VII case brought by a USPS employee is the Postmaster General.").

## 1.  Discrimination

In her first cause of action, Krul asserts three distinct theories of discrimination under Title VII:  disparate treatment, a hostile work environment, and constructive discharge.  Pl.'s Opp'n, Dkt. No. 22-3 at 9-14.[4]

## a.  Disparate Treatment

To state a claim for disparate treatment under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against [her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  "A plaintiff sustains an

---

[4]  Pagination corresponds to CM/ECF.

adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Morris*, 268 F. Supp. 3d at 363 (citation omitted). "As to the second element, an action is 'because of' a plaintiff's race, color, religion, sex, or national origin where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." *Vega*, 801 F.3d at 85 (citation omitted). In other words, "a plaintiff in a Title VII case need not allege 'but-for' causation." *Id*.

Krul contends that her Title VII claim for disparate treatment should survive dismissal because District Manager Kelley repeatedly denied her promotional opportunities and gave her undesirable or more difficult assignments and tasks. Pl.'s Opp'n at 10. Plaintiff was also forced to relocate to the Fort Plain Office, an unsafe office space that required a longer commute. *Id*. According to plaintiff, her similarly situated male counterparts were not treated this way. *See id*.

Defendants argue that none of the incidents alleged by Krul satisfy Title VII's adverse-action requirement. Defs.' Mem., Dkt. No.18-1 at 28-30; Defs.' Reply, Dkt. No. 27 at 10-11. According to defendants, plaintiff has failed to plausibly allege any "material harm" flowing from any of the alleged events. Defs.' Reply at 11.

Title VII is not "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). To that end, an employee who alleges discrimination based on one or more discrete adverse actions cannot bring suit under Title VII unless the incident(s) about which she complains amount to "a materially adverse change in the terms and conditions of employment." *Sotak v. Bertoni*, –F. Supp. 3d–, 2020 WL 6479374, at *13-*14 (N.D.N.Y. Nov. 4, 2020) (cleaned up) (finding this requirement unsatisfied at summary judgment where, *inter alia*, the plaintiff failed to marshal evidence of

- 10 -

any significant change in the terms and conditions of her employment).

This materiality requirement works to screen out discrimination claims that are based on "everyday workplace grievances, disappointments, and setbacks." *Cunningham v. N.Y. State Dept' of Labor*, 326 F. App'x 617, 620 (2d Cir. 2009) (summary order) (affirming grant of summary judgment against plaintiff who alleged trivialities); *see also Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (emphasizing that the complained-of action must create "a materially significant disadvantage" in working conditions).

"While there is no exhaustive list of what constitutes an adverse employment action, courts have held that the following actions, among others, may qualify:  discharge or demotion; denial of a provisional or permanent promotions; involuntary transfer that entails objectively inferior working conditions; denial of benefits; denial of a requested employment accommodation; denial of training that may lead to promotional opportunities; and a shift assignment that makes a normal life difficult for the employee." *Sotak*, 2020 WL 6479374, at *14.  In short, "[a]n adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citation omitted).

 Upon review, defendants' arguments will be rejected.  Krul's proposed second amended complaint alleges more than just everyday workplace grievances.  Plaintiff alleges she missed out on several career advancement opportunities and was denied professional training events that her similarly situated male counterparts were able to enjoy.  Proposed Am. Compl. ¶¶ 14-15, 29.  Plaintiff alleges that she was given a more difficult and/or undesirable workload than her similarly situated male peers.  *Id*. ¶¶ 13, 16, 18, 19, 21, 30, 31.  Plaintiff has also alleged that she was singled out and forced to relocate to the Fort Plain

office, which required her to endure a longer commute to an unsafe space in which to perform her job duties.[5]  *Id.* ¶¶ 16-17.  These allegations are sufficient to plausibly allege that plaintiff suffered several adverse employment actions that resulted in material disadvantage.  Whether or not plaintiff can pair these allegations with facts in discovery tending to support them is a matter for summary judgment, not a motion to dismiss.

Krul has also plausibly alleged that these adverse actions occurred at least in part for a discriminatory reason.  Among other things, plaintiff's proposed pleading names several similarly situated male employees who were treated more favorably than her under the same or similar circumstances.  At oral argument, defendants claimed that this was not enough because plaintiff had failed to plausibly alleged that any of these adverse actions occurred "based on her sex alone."

But that is not the appropriate standard of causation.  "Under Title VII, a plaintiff may succeed simply by establishing that sex (or another protected characteristic) was a motivating factor for any employment practice, even though other factors also motivated the practice."  *Naumovski v. Norris*, 934 F.3d 200, 213 (2d Cir. 2019) (cleaned up); *see also U. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 349 (2013) (explaining how the 1991 amendments to Title VII's "principal ban on status-based discrimination" created "a lessened causation standard" for disparate treatment claims).

At the pleadings stage, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts

---

[5]  Courts generally hold that a longer commute does not satisfy the adverse-action requirement.  *See, e.g.*, *Levitant v. City of N.Y. Human Res. Admin.*, 914 F. Supp. 2d 281, 302 (E.D.N.Y. 2012).  However, being singled out for an involuntary transfer to an allegedly unsafe office space is sufficient to meet this threshold pleading requirement.

that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87 (citing *Littlejohn v. City of N.Y.*, 795 F.3d 297, 310 (2d Cir. 2015)).[6]  Plaintiff has done so here.  Accordingly, defendants' motion to dismiss Krul's Title VII claim for disparate treatment against the Postmaster General will be denied.

### b. Hostile Work Environment

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct:  (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 721-22 (E.D.N.Y. 2015) (cleaned up).  "To avoid dismissal of a claim alleging hostile work environment, the plaintiff need only plead facts to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Id.*

Defendants contend that this claim must be dismissed because Krul has failed to allege that any mistreatment occurred because of her sex.  Defs.' Reply at 12.  According to defendants, plaintiff has totally failed to grapple with the fact that her allegations, even consider together under a "totality of the circumstances" analysis, are insufficient to plausibly

---

[6]  In *Vega*, the Second Circuit clarified that *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), which held that it is inappropriate to require a plaintiff to plead a *prima facie* case under the *McDonnell Douglas* framework to survive a pre-answer motion to dismiss, was still good law.  801 F.3d at 83-84; *see also Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 328-29 (S.D.N.Y. 2010) (explaining the analytical confusion that persisted over *Swierkiewicz* in the wake of *Twombly* and *Iqbal*).

show that her working conditions were altered by sex-based harassment.  *Id*.

Upon review, this argument will also be rejected.  Krul's proposed second amended pleading alleges a continuing course of mistreatment from District Manager Kelly and, at times, from HR Manager Lynch.  Among other things, plaintiff alleges that Kelly repeatedly treated plaintiff's male peers more favorably and mocked plaintiff in a high-pitched voice when she complained about it.  According to plaintiff, this behavior continued to escalate, causing her increased anxiety and emotional harm, until she could not longer tolerate it and was forced to retire early.

While these facts alone might be insufficient to survive summary judgment after discovery, these factual *allegations* are sufficient to avoid pre-answer dismissal of this claim.  *Ingrassia*, 130 F. Supp. 3d 721-22 ("To avoid dismissal of a claim alleging hostile work environment, the plaintiff need only plead facts to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.").  Accordingly, defendants' motion to dismiss Krul's Title VII claim for a hostile work environment against the Postmaster General will be denied.

### c. **Constructive Discharge**

Constructive discharge is a kind of adverse employment action.  *Walsh v. Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467, 478 (S.D.N.Y. 2019).  "Constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation."  *Stofsky v. Pawling Cent. Sch. Dist.*, 635 F. Supp. 2d 272, 299 (S.D.N.Y. 2009).  "Working conditions are intolerable when, viewed as a whole, they are so difficult or

unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Walsh*, 375 F. Supp. 3d at 478.

Defendants contend this claim must be dismissed because Krul "has not alleged any facts that could establish that her employer intentionally created a work environment so hostile that she would be compelled to resign." Defs.' Mem. at 34. This argument must be rejected for substantially the same reasons that it failed to carry the day against plaintiff's hostile work environment claims—plaintiff alleges that District Manager Kelly repeatedly treated plaintiff's male peers more favorably and mocked plaintiff when she complained about it. According to plaintiff, this behavior continued to escalate in frequency and severity until she could not longer tolerate it and was forced to retire early.

Like her hostile environment claim, these facts alone might not be sufficient to defeat summary judgment. But drawing all reasonable inferences in Krul's favor, these allegations are sufficient to defeat a pre-answer motion to dismiss. Accordingly, defendants' motion to dismiss Krul's Title VII claim for constructive discharge against the Postmaster General will be denied.

## 2. Retaliation

In her second cause of action, Krul asserts a Title VII claim for retaliation against the Postmaster General. "[F]or a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausible allege that: (1) defendants discriminated—or took an adverse employment action—against [her]; (2) 'because' [she] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90.

In the context of a retaliation claim, "an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of

discrimination."  *Vega*, 801 F.3d at 90 (citation omitted).  "This definition covers a broad

ranger of conduct than does the adverse-action standard for claims of discrimination under

Title VII: "[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is

not limited to discriminatory actions that affect the terms and conditions of employment."  *Id*.

>    As the Supreme Court has explained:

>> Context matters.  The real social impact of workplace behavior often
>> depends on a constellation of surrounding circumstances,
>> expectations, and relationships which are not fully captured by a
>> simple recitation of the words used or the physical acts performed.
>> A schedule change in an employee's work schedule may make little
>> difference to many workers, but may matter enormously to a young
>> mother with school-age children.  A supervisor's refusal to invite an
>> employee to lunch is normally trivial, a nonactionable petty slight.
>> But to retaliate by excluding an employee from a weekly training
>> lunch that contributes significantly to the employee's professional
>> advancement might well deter a reasonable employee from
>> complaining about discrimination.

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) (cleaned up).

"As for causation, a plaintiff must plausibly plead a connection between the act and

[her] engagement in protected activity."  *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e-

3(a)).  For instance, "[a] retaliatory purpose can be shown indirectly by timing:  protected

activity followed closely in time by adverse employment action."  *Id*.  "Unlike Title VII

discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff

made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of

the employer's adverse action."  *Id*.; *see also Nassar*, 570 U.S. at 360 ("Title VII retaliation

claims must be proved according to traditional principles of but-for causation[.]").

Upon review, this claim also survives dismissal.  Krul alleges that, after she informally

complained to District Manager Kelly that she was being treated differently than her male

counterparts, he began to deny her access to promotional opportunities and training events, gave her less desirable job assignments, and assigned her an extra-heavy workload.

Krul also alleges that, when she formally complained to the USPS EEO counselors and to the EEOC in two administrative complaints, Kelly and HR Manager Lynch's retaliatory behavior increased in frequency and degree, with Kelly assigning plaintiff to an unsafe office space in Fort Plain and with Lynch manipulating certain job postings to make plaintiff look incompetent and undermine her position as POOM.

These allegations are sufficient to state a plausible claim for retaliation.  *Morris*, 268 F. Supp. 3d at 369 ("Courts in the Second Circuit have taken a 'generous' view of retaliatory acts at the motion to dismiss stage."); *see also Birkholz v. City of N.Y.*, 2012 WL 580522, at *8 (E.D.N.Y. Feb. 22, 2012) ("The anti-retaliation provisions of Title VII have a broad reach.").  Accordingly, defendants' motion to dismiss Krul's Title VII claim for retaliation against the Postmaster General will be denied.

### B.  Fifth Amendment

In the third and fourth causes of action in her proposed amended complaint, Krul brings Fifth Amendment discrimination and retaliation claims against District Manager Kelly and HR Manager Lynch.  Proposed Am. Compl. ¶¶ 42-47.  Plaintiff recognizes that Title VII does not provide for individual liability but insists that Kelly and Lynch can be held individually liable for the alleged discrimination and retaliation under the implied cause of action endorsed by the Supreme Court in *Bivens*.

"In *Bivens*—proceeding on the theory that a right suggests a remedy—[the Supreme Court] 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'"  *Ashcroft v. Iqbal*, 556 U.S.

662, 675 (2009) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)).  "In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under [42 U.S.C. § 1983].'"  *Id*. at 675-76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)).  However, "[b]ecause implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability 'to any new context or new category of defendants.'"  *Id*. at 675 (citation omitted).  As the Supreme Court has cautioned, "expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (citation omitted).

Krul contends that this case does not require an expansion of *Bivens* into a new context because the Supreme Court has already recognized a Fifth Amendment *Bivens* remedy for employment discrimination.  As plaintiff explains, in *Davis v. Passman*, 442 U.S. 228, 234-35 (1979), the Supreme Court "authorized gender discrimination victims to bring claims under the Constitution directly against Federal officers."  Pl.'s Opp'n at 5.

Krul is partially correct.  In *Davis*, the former deputy administrative assistant to a Congressman alleged that her employer had fired her because she was a woman.  *Davis*, 442 U.S. at 247.  In fact, the Congressman had actually written a letter to the plaintiff in which he explained that although she was "able, energetic and a very hard worker, . . . it was essential that the understudy to my Administrative Assistant be a man."  *Id*. at 231.

Although the *Davis* plaintiff was a (former) federal employee, she was unable to bring suit against the Congressman under Title VII because she was not actually covered by the "federal sector" provision of the Act.  442 U.S. at 247.  As the Supreme Court explained, when Congress added § 717 to Title VII "to protect federal employees from discrimination, it failed to extend this protection to congressional employees such as [the plaintiff] who are not

in the competitive service." *Id*.  Because the *Davis* plaintiff had no other remedy, the

Supreme Court recognized her *Bivens* cause of action under the Fifth Amendment so that

she could bring a discrimination suit directly against the Congressman.  *Davis*, 442 U.S. at

247.

Krul is not in the same position.  Unlike the administrative assistant who needed some

help suing her former employer in *Davis*, plaintiff already has an existing remedial scheme

available to her:  She is covered by the federal-sector provision of Title VII.  The Supreme

Court has explicitly recognized that where, as here, a plaintiff has access to Title VII's

employment protections, a *Bivens*-type remedy is unnecessary and inappropriate.  *Davis*,

442 U.S. at 247 & n.26; *see also Brown v. General Services Administration*, 425 U.S. 820,

835 (1976) (holding that "section 717 of the Civil Rights Act of 1964, as amended, provides

the exclusive judicial remedy for claims of discrimination in federal employment.").

Lower federal courts have done the same.  *See, e.g.*, *Corbett v. Napolitano*, 897 F.

Supp. 2d 96, 120 (E.D.N.Y. 2012) ("Title VII does provide a remedy and plaintiff need not

and cannot resort to a *Bivens* claim for his alleged discrimination."); *Pratt v. Brennan*, 2020

WL 364195, at *6 (S.D.N.Y. Jan. 20, 2020) ("As other courts in the Second Circuit have

recognized, Plaintiff's alleged injuries are covered through an alternate remedy, i.e., Title VII,

obviating the need to open up *Bivens* actions to Title VII plaintiffs.").

In briefing and at oral argument, Krul relied on *Maglietti v. Nicholson*, 517 F. Supp. 2d

624 (D. Conn. 2007), to justify a contrary result.  But *Maglietti* does not support one.  In

*Maglietti*, the plaintiff, an employee of the Department of Veterans Affairs ("VA"), sued her

employer for transferring her to a different VA facility.  *Id*. at 626.  The plaintiff asserted

employment discrimination claims under, *inter alia*, Title VII and the First and Fifth

Amendments.  *Id*.

The VA moved for summary judgment against the plaintiff's Constitutional claims on the grounds that they were "pre-empted" by Title VII under the rule announced by the Supreme Court in *Brown*.  *Maglietti*, 517 F. Supp. 2d at 633.  The trial court rejected the VA's argument in part, concluding that *Brown* did not necessarily preclude a plaintiff from bringing certain Constitutional claims which "allege[d] the violation of different substantive rights than what could be redressed under Title VII."  *Id*.

After carefully parsing *Maglietti*'s reasoning, the Court declines to adopt its holding.  Importantly, the *Maglietti* Court began from the premise that *Davis v. Passman* recognized a *general* private right of action "for claims under the Due Process clause of the Fifth Amendment."  517 F. Supp. 2d at 632.  But that is not how *Bivens* works.  To the contrary, "the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in 'new contexts.'"  *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) ("We construe the word 'context' as it is commonly used in law:  to reflect a potentially recurring scenario that has similar legal and factual components.").

*Maglietti* and *Davis* did not have similar legal and factual components.  Unlike the *Davis* plaintiff, the *Maglietti* plaintiff could (and did) bring suit against the VA under Title VII.  *Maglietti* fails to acknowledge this distinction even though it was the driving force behind the Supreme Court's endorsement of a limited Fifth Amendment *Bivens* remedy for the Congressman's former deputy administrative assistant in *Davis*.  442 U.S. at 245 ("For Davis, as for Bivens, it is damages or nothing.").

Indeed, as another trial court that tried to reconcile *Maglietti*'s holding with the

- 20 -

Supreme Court's decisions in *Brown*, *Bivens*, and *Davis* observed, *Maglietti* "appears directly at odds with the then-controlling law of the Second Circuit." *Lerner v. Shinseki*, 2013 WL 1758752, at *5 n.1 (W.D. Ky. Apr. 24, 2013).  Accordingly, defendants' motion to dismiss Krul's Fifth Amendment claims against Kelly and Lynch will be granted.

## IV.  <u>CONCLUSION</u>

Because Title VII provides a remedy for discrimination and retaliation claims in the federal workplace, Krul's Fifth Amendment claims against Kelly and Lynch must be dismissed.  The same is true for any individual claims against the Does.  *See, e.g.*, *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) ("Employers, not individuals, are liable under Title VII.").  However, it is far too early to dismiss plaintiff's Title VII claims against the Postmaster General.  While one or more of her theories of relief may ultimately prove untenable at summary judgment, plaintiff has alleged facts that plausibly show an entitlement to relief.  Accordingly, plaintiff will be permitted to conduct discovery into those claims.

Therefore, it is

ORDERED that

1.  The Clerk of the Court is directed amend the caption to reflect that Louis DeJoy has assumed the office of U.S. Postmaster General;

2.  Defendants' motion to dismiss is GRANTED in part and DENIED in part;

3.  Plaintiff Michelle Krul's cross-motion to amend is GRANTED;

4.  Plaintiff Michelle Krul's proposed second amended complaint (Dkt. No. 22-2) is ACCEPTED for filing;

5.  The Clerk of the Court is directed to docket plaintiff's Second Amended Complaint as the operative pleading in this action;

6.  The Postmaster General's motion to dismiss the Title VII claims in the First and Second Causes of Action is DENIED;

7.  Defendants' motion to dismiss the Fifth Amendment claims in the Third and Fourth Causes of Action is GRANTED;

8.  Thomas Kelly, Lisa Lynch, and the Does are DISMISSED as individual defendants in this action; and

9.  The Postmaster General shall file an answer to the Title VII claims in the First and Second Causes of Action on or before December 1, 2020.

IT IS SO ORDERED.

Dated:  November 17, 2020
        Utica, New York.

_____
United States District Judge